UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
                                                            :
CUSTOMERS BANK f/k/a NEW CENTURY           :
BANK,                                                       :        11 Civ. 07992 (AJN) (DF)
                         Plaintiff,                         :
                                                            :        **REPORT AND**
           -against-                                        :        **RECOMMENDATION**
                                                            :
ANMI, INC. d/b/a NATURALLY TASTY and        :
HYON CHON WASHINGTON,                          :
                         Defendants.                        :
                                                            :
-------------------------------------------------------------X

**TO THE HONORABLE ALISON J. NATHAN, U.S.D.J.:**

This matter is currently before this Court for a damages inquest on a judgment entered in

favor of plaintiff Customers Bank f/k/a New Century Bank ("Customers" or "Plaintiff") against

defendants Anmi, Inc. d/b/a Naturally Tasty ("Anmi") and Hyon Chon Washington

("Washington") (collectively, "Defendants"), on Plaintiff's claims that Defendants are liable for

defaulting on a promissory note and guarantee.  (*See* Dkt. 25.)  For the reasons that follow, I

recommend that Plaintiff be awarded damages, attorneys' fees, and costs, calculated as set out

below.

## BACKGROUND

A.    **Factual Background**[1]

Plaintiff is a Pennsylvania-chartered bank in good standing; it has a principal place of

business in Phoenixville, Pennsylvania, and is certified to do business in the State of New Jersey.

---

[1] The facts set forth herein are taken from Plaintiff's Complaint (*see* Complaint, dated
Nov. 8, 2011 ("Compl.") (Dkt. 1)), Washington's Answer (*see* Answer, filed Feb. 22, 2012
("Answer") (Dkt. 7)), Plaintiff's Proposed Findings of Fact and Conclusions of Law (*see*
Proposed Findings of Fact and Conclusions of Law, dated Jan. 25, 2013 ("Proposed Findings")
(Dkt. 31)), and the supporting documents and affidavits attached thereto.

(*See* Compl. ¶ 1.)  Defendant Anmi is a New York corporation in good standing that operated a restaurant located at 234 Fifth Avenue, New York, New York 10001.  (*Id*. ¶ 3.)  Defendant Washington is a New Jersey resident.  (*Id*. ¶ 4.)

On or about June 30, 2004, InterState Net Bank ("InterState"), a New Jersey-chartered Internet bank, extended a $230,000.00 loan to Anmi.  (*See id.* ¶ 6 & Ex. A (Note and Security Agreement, dated June 30, 2004), at 2; Answer ¶ 6; *see also* Proposed Findings ¶ 1.)  In return for this loan, Anmi executed a promissory note (the "Note") along with a security agreement (the "Security Agreement"), whereby Anmi agreed to pay $230,000.00 plus interest to InterState. (Compl. ¶ 6 & Ex. A; Answer ¶ 6.)  The Note and Security Agreement were signed by Washington, as President of Anmi.  (Compl. Ex. A.)  Also on or about June 30, 2004, Washington executed a personal guarantee (the "Guarantee"), whereby she agreed to be jointly and severally liable for Anmi's obligations under the Note and Security Agreement.  (*Id.* Ex. C (Unconditional Guarantee, dated June 30, 2004); Answer ¶ 3.)  Although Anmi made payments under the Note for a period of time, Anmi ultimately failed to make the required payments under the Note and Security Agreement, and Washington failed to pay Anmi's outstanding debt pursuant to the Guarantee, placing both Defendants in default of their obligations under these instruments, as of June 1, 2009.  (*Id.* ¶¶ 10-11; *see also* Answer ¶¶ 10, 23.)

In 2010, Plaintiff purchased the assets of InterState and assumed all of Interstate's rights and obligations under the Note, Security Agreement, and Guarantee.  (Compl. ¶ 2.)  Plaintiff brought this suit as InterState's successor in interest, seeking to recover all amounts Anmi and Washington owed pursuant to the Note, Security Agreement, and Guarantee, and also to take possession of Defendants' collateral.  (*Id.*)

1.    **The Promissory Note**

The Note details the terms for Anmi's repayment of the loan.  According to Section 3 of the Note, the loan amount was to be repaid pursuant to a fluctuating interest scheme, whereby the annual interest rate would be 2.75% above the nationally-set prime interest rate, as published by the *Wall Street Journal*.[2]  (*Id*. Ex. A, at 3.)  The interest rate only reset on the first calendar day of the month after a change in the prime rate had occurred.  (*Id*.)  Under the Note, Anmi was required to make monthly payments of $2,641.67, which would first be applied to accrued interest, next to bringing principal current, then to late fees, with the remainder dedicated to reducing the principal balance owed.  (*Id*.)  The payment amount was to be adjusted at least annually, as necessary "to amortize principal over the remaining term of the note."  (*Id.*)  Anmi's first monthly payment was due on August 1, 2004, and each subsequent payment was due on the first of each month thereafter.  (*Id*.)

Under the Note, Anmi was required to pay a late-payment fee for any payments made more than 10 days after they were due.  (*Id*.)  If Anmi made a payment more than 10 days late, then InterState was entitled to charge Anmi "up to 5% of the unpaid portion of the regularly scheduled payment" that was paid late.  (*Id*.)  The full balance of the Note's principal and all accrued interest were to be paid within 10 years from the date of the Note.  (*Id*.)

Section 4 of the Note sets out the circumstances under which InterState could consider the loan in default, and Section 5 describes InterState's rights in the event of a default.  (*Id*. Ex. A, at 4.)  The Note states, *inter alia*:  "Borrower is in default under the Note if Borrower does not

---

[2] The Note stated that the interest rate would be the " 2.75% above the Prime Rate" for an initial rate of 6.75%.  (Compl. Ex. A, at 3.)  The Note defined the "Prime Rate" as "the prime rate in effect on the first business day of the month in which an interest rate change occurs, as published in the *Wall Street Journal* on the next business day."  (*Id.*)

make a payment when due under this Note." (*Id.*)  The next section, entitled "LENDER'S

RIGHTS IF THERE IS A DEFAULT" explains that, upon a default:

> Without notice or demand and without giving up any of his rights,
> Lender may:
>
> > A.    Require immediate payment of all amounts owing
> >        under this Note;
> >
> > B.    Collect all amounts owing from any Borrower or
> >        Guarantor;
> >
> > C.    File suit and obtain judgment;
> >
> > D.    Take possession of any Collateral; or
> >
> > E.    Sell, lease, or otherwise dispose of, any Collateral at
> >        public or private sale with or without advertisement.

(*Id.*)

Under Section 6 of the Note, InterState, with or without notice to, or consent from, Anmi,

also had the right to recover "expenses [incurred] to collect amounts due under this Note." (*Id.*)

Allowable expenses included, among other things, reasonable attorneys' fees and costs.  (*Id.*)  If

InterState were to incur these expenses, the Note gave it the right to "demand immediate

repayment from [Anmi] or add the expenses to the principal balance." (*Id.*)  Section 8 of the

Note explicitly defines "Lender" to include InterState's "successors and assigns." (*Id.* Ex. A,

at 5.)

### 2.    <u>The Guarantee</u>

On the same day that Anmi delivered the Note, Washington executed a Guarantee, under

which Washington "unconditionally guarantee[d] payment to Lender of all amounts owing under

the Note." (*Id.* Ex. C, at 1.)  Washington agreed to pay "all amounts due under the Note when

Lender makes written demand upon" her, and also promised "to pay all expenses Lender incurs

to enforce this Guarantee, including, but not limited to, attorney's fees and costs." (*Id*. Ex. C, at 2, 4.)  By its terms, the Guarantee was to remain "in effect until the Note is paid in full." (*Id*. Ex. C, at 2.)

### 3.    Defendants' Default

According to the loan payment history submitted to the Court by Plaintiff, Defendants made payments on the loan up until June 1, 2009.  (*See* Supplemental Affidavit in Support of Plaintiff's Application for Damages, sworn to Jan. 22, 2013 ("Supp. Hansen Aff.") (Dkt. 31-2) Exs. A-1, A-2 (collectively "Loan Payment History," dated Jan. 1, 2006 through April 12, 2010 (Dkts. 31-3, 31-4)[3].)  After its June 1, 2009 payment, however, Anmi made no further payments on the loan.  (*Id*. ¶¶ 5-6 & Ex. A-2, at 24-33.)  Under the terms of the Note, Anmi's failure to make timely loan payments constituted an Event of Default and triggered the lender's rights to accelerate the loan balance to become due immediately; to collect from Washington, as Guarantor, all outstanding amounts due; and to file suit and obtain a judgment.  (Compl. Ex. A, at 4.)

At some point following Anmi's default, Plaintiff demanded that Anmi either pay its obligations or surrender possession of the collateral defined in the Note.  (Hansen Aff. ¶ 15.) After Anmi's last payment on June 1, 2009, the principal balance due was $163,204.12, which Plaintiff has accelerated to be due immediately, along with late charges, interest, costs and attorneys' fees.  (Hansen Aff. ¶ 12.)  Anmi ignored Plaintiff's demands, and Plaintiff has represented to the Court that, as of January 22, 2013 (the date of its submission on this inquest), the amounts due under the Note have still not been paid.  (*See id.*; Supp. Hansen Aff. ¶ 5 & Ex. A-2, at 24-33.)

---

[3] The Loan Payment History only reflects activity on the loan through April 12, 2010, at which point the account was charged off.  (Supp. Hansen Aff. ¶ 5.)

B.   **Procedural History**

Plaintiff commenced this action on November 8, 2011 (*see* Compl.), and served

Defendants on December 12, 2011 (*see* Dkt. 4).  Plaintiff asserted three claims against

Defendants, two of which are relevant to this inquest:  Plaintiff's first claim, in which it sought to

recover from Anmi for breach of contract, due to its non-payment of the amounts owed on the

June 30, 2004 Note (Compl. ¶¶ 6-13), and Plaintiff's third claim, in which it sought to recover

against Washington for breach of contract, due to Washington's failure to pay the amounts owed

on the Note, as promised in the Guarantee  (*id*. ¶¶ 21-24).  In Plaintiff's second claim, which is

not at issue here, Plaintiff sought to take possession of collateral securing the loan pursuant to the

June 30, 2004 Security Agreement.  (*Id*. ¶¶ 14-20.)

As of February 6, 2012, neither Anmi nor Washington had filed an Answer or otherwise

moved with respect to the Complaint, so Plaintiff requested that the Defendants' default be

entered on the docket.  (Dkt. 3.)  On February 10, 2012, the Clerk of Court entered a Certificate

of Default against both Defendants (Dkt. 5), which Plaintiff served on Defendants two days later

(Dkt. 6).

On February 22, 2012, Washington filed an Answer to the Complaint.[4]  (*See generally*

Answer.)  Neither Washington nor Anmi, however, then appeared at an April 26, 2012 status

conference before the Court.  (Dkts. 9, 10, 11.)  At that conference, which only Plaintiff

attended, the Court granted Plaintiff leave to file a summary judgment motion.  (Dkt. 11.)  In a

written Order memorializing its ruling, the Court emphasized that, by law, a corporation is

unable to proceed in this Court *pro se* and, thus, if Anmi wished to defend the case, it would be

required to appear through counsel.  (*See id*.)  Plaintiff filed its Motion for Summary Judgment

---

[4] Although the Answer purports to be on behalf of both Washington and Anmi, Anmi is a
corporate entity that cannot proceed *pro se* in this Court.

on May 15, 2012 (Dkts. 13-15), serving copies on Washington and Anmi on June 8, 2012, by Certified Mail (Dkt. 18).[5]

On June 14, 2012, this Court's *Pro Se* Office received a letter from Washington, stating that she had been unaware both of the April 26, 2012 status conference and of the fact that Anmi, as a corporation, would be unable to proceed in the matter *pro se*.  (Dkt. 21.)  Washington further stated that she was in the process of obtaining counsel and requested that the Court stay the proceedings for one month in order for her to retain counsel.  (*Id.*)  On June 26, 2012, the Court issued an Order granting Washington's request for a stay and instructing her to file an appearance with the Court's *Pro Se* Office immediately.  (*Id.*)  The Court itself mailed a copy of its Order to Washington at the return address provided on her correspondence to the Court, and also directed Plaintiff to serve the Order on Washington.  (*Id.*)  Plaintiff then filed a Certificate of Service, reflecting service of the Order by mail on both Washington and Anmi, on July 2, 2012. (Dkt. 22.)

Over five months later, after Washington failed to comply with the Court's June 26 Order and the Court had received no further correspondence from Defendants, the Court granted summary judgment in Plaintiff's favor.  *See Customers Bank v. Anmi, Inc.*, No. 11 Civ. 7992 (AJN), 2012 WL 6629100, at *1 (S.D.N.Y. Dec. 20, 2012).  As the Court explained in its summary judgment opinion, a plaintiff suing on a promissory note need only show that there is no issue of material fact relating to the execution and default of that note, in order for summary judgment to be proper.  *See id.* (citing *Fragin v. Mezei*, 2012 WL 489100, at *9 (S.D.N.Y.

---

[5] The Certificate of Service states that the copy of the motion addressed to Anmi was served personally "upon Kim Hyon – Owner," purportedly an "authorized agent of the named entity."  (Dkt. 18.)  It is unclear whether this is referring to Washington, who was named in the Complaint as "Hyon Chon Washington" and identified in the Note and Security Agreement as Anmi's President.

Feb. 13, 2012)).  The Court further explained that a *prima facie* case of default under New York law is demonstrated by production of a valid note and failure by the defendant to make payments due under the note, despite proper demand.  *Id.* at *10.  The Court held that Plaintiff had satisfied its burden of proof by providing documentation of the Note, as well as an uncontested affidavit of Kathleen Hansen, Plaintiff's Vice President, stating that Plaintiff had extended the funds in the Note, and that, notwithstanding Plaintiff's demand, Anmi had failed to make all of the payments required.  *Id.* at *2.  The Court also found that the Guarantee was valid, and that Washington was therefore jointly and severally liable for Anmi's obligations under the Note.  *Id.* at *3.

Finding that Plaintiff was entitled to take possession of Defendants' collateral for the loan, *see id.* at *1, the Court proceeded to issue an Order of Possession, granting Plaintiff that relief.  (S*ee* Order of Possession, dated Jan. 11, 2013 (Dkt. 29).)  Plaintiff's contract claims, however, were referred to this Court for a damages inquest.  (Dkt. 26).

On January 25, 2013, Plaintiff filed Proposed Findings of Fact and Conclusions of Law with Respect to Damages, along with supplemental affidavits and supporting documentation, including a 58-page Loan Payment History.  (*See generally* Proposed Findings; Supp. Hansen Aff. Exs. A-1, A-2.)  Plaintiff asked the Court to award it the principal unpaid balance of the Note in the amount of $163,204.12, interest on the unpaid balance totaling $36,040.00, late fees in the amount of $9,587.42, and attorneys' fees and costs in the amount of $10,239.14.  (*See* Proposed Findings ¶¶ 9-10.)  These totals were calculated through January 16, 2013.  (*Id.*)  Defendants have neither responded to Plaintiff's submission nor communicated with the Court in any other way with respect to this inquest.

**DISCUSSION**

On a damages inquest, a court may conduct an inquest on documentary evidence alone where there is a basis for the damages awarded.  *See, e.g.*, *Transatl. Marine Claims Agency, Inc. v. Ace Shipping Corp.*, 109 F.3d 105, 111 (2d Cir. 1997) (noting that the Court "should take the necessary steps to establish damages with reasonable certainty"); *Garden City Boxing Club, Inc. v. Hernandez*, No. 04 Civ. 2081 (LAP) (DF), 2008 WL 4974583, at *2 (S.D.N.Y. Nov. 24, 2008) (determining the adequacy of the plaintiff's damages claim based solely on its submitted proofs where defendant neither responded to plaintiff's submissions with respect to its claimed damages nor requested a hearing with respect to damages).  Moreover, courts have held that, "in cases involving debt instruments, a note, guarantee, and affidavit may cumulatively provide an adequate basis for determining damages and establish the right to certain amounts owed on the instruments."  *U.S. Bank Nat. Ass'n v. Crutch*, No. 09 Civ. 998 (FB) (RER), 2011 WL 7096607, at *1 (E.D.N.Y. Dec. 6, 2011), *report & recommendation adopted by* 2012 WL 243381 (E.D.N.Y. Jan 25, 2012).  In this case, Plaintiff has provided a damages calculation and sufficient evidence to evaluate the fairness of its claimed damages without the need for an evidentiary hearing.

Under New York law, which the Court has already determined applies to this action, *Customers Bank*, 2012 WL 6629100, at *2, the general measure of damages on a breach-of-contract claim is "the amount necessary to put the plaintiff in the same economic position he would have been put in had the defendant fulfilled his contract.'"  *Chaman Lal Setia Exports Ltd. v. Sawhney*, No. 00 Civ. 2838 (MBM) (KNF), 2003 WL 21649652, at *4 (S.D.N.Y. May 28, 2003) (quoting *Indu Craft, Inc. v. Bank of Baroda*, 47 F.3d 490, 495 (2d Cir. 1995)).  As discussed below, Plaintiff is entitled to damages, on its contract claims, for the unpaid principal

balance on the Note, the unpaid interest on that balance, and certain unpaid late fees on the Note. Based on the provisions of the governing contracts, Plaintiff is also entitled to recover both the reasonable attorneys' fees and the costs it incurred in seeking to collect the sums owed.

### A.      Plaintiff's Damages for Unpaid Amounts on the Note

#### 1.      The Principal Balance

Plaintiff seeks to recover from the Defendants the outstanding principal balance due under the Note.  (Compl. Exs. A, at 2 & C, at 2.)  The original amount of the loan was $230,000.000.  (*Id.*)  According to the uncontested supplemental affidavit submitted by Hansen, Anmi made a loan payment on June 1, 2009, but no payments have been made since that date. (*See* Supp. Hansen Aff. ¶ 6, Ex. A-2.)  The Loan Payment History attached to the Supplemental Hansen Affidavit shows that, following that June 1, 2009 payment, a principal balance of $163,204.12 remained unpaid on the loan.  (*Id.*)  Taking as established the fact that no payments were made on the loan after June 1, 2009 (*id.* at ¶ 5), this Court finds that Plaintiff is entitled to recover $163,204.12 from Anmi, pursuant to the Note, and the same amount (jointly and severally) from Washington, pursuant to the Guarantee.  *See Customers Bank*, 2012 WL 6629100, at *2-3.

#### 2.      Interest

Plaintiff also seeks all accrued and unpaid interest on the Note after June 1, 2009.  (*See* Proposed Findings ¶ 9.)  The Loan Payment History demonstrates that, after June 1, 2009, no payments were made through April 12, 2010 (when the loan was charged off), and Hansen asserts that no further payments were made from then through January 22, 2013, the date of Plaintiff's submission.  (Supp. Hansen Aff. ¶ 5 & Ex. A-2.)  Based on this, Plaintiff is entitled to recover all interest that has accrued on the remaining principal ($163,204.12), at the applicable

interest rate, from June 1, 2009 through the date of the entry of final judgment in this action.

Under the Note, the interest rate was to be adjusted on the first calendar day of each month, and was to be indexed at 2.75% above the prime rate published in the *Wall Street Journal*. (Compl. Ex. A, at 2.) In 2004, when the loan was originated, the interest rate on the note was 6.75% (*i.e.*, 2.75% above the then-prime rate of 4%) (*id.*), but, at the time of Defendants' default in June 2009, and up until suit was filed on November 8, 2011, the interest rate was 6.00% (*i.e.*, 2.75% above the then-prime rate of 3.25%).[6] (*See* Supp. Hansen Aff. ¶ 7, Exs. A-1, A-2.)

Without acknowledging or explaining this, Plaintiff appears to have calculated the interest it is owed based on a 360-day year. (*See* Proposed Findings ¶ 9; Supp. Hansen Aff. ¶ 7 & Ex. B (apparently calculating annual interest by (1) multiplying the outstanding principal by the interest rate of 6% per annum, (2) dividing the product by 360 days, and then (3) multiplying that "daily" interest figure by the number of actual days in between June 1, 2009 and January 16, 2013).) While the Court recognizes that such methodology is sometimes used in the context of the types of financial instruments at issue,[7] the Note that is the subject of this case does not explicitly provide for this. (*See* Compl. Ex. A, at 3 (stating only that the initial interest rate would be 6.75% "per year" and that the adjusted interest rate would be 2.75% plus the Prime

---

[6] The Court has independently confirmed that the interest rate charged by Plaintiff was properly indexed to the Prime Lending Rate as set by the Federal Reserve and published by the *Wall Street Journal*. At the time of loan origination in June 2004, through December 16, 2008, the prime rate was, in fact, 4.00%. *See, e.g.*, http://www.fedprimerate.com/wall_street_journal_prime_rate_history.htm; http://www.federalreserve.gov/releases/h15/current/ (last visited Jan. 7, 2014); *see also* Supp. Hansen Aff. Exs. A-1, A-2. On December 16, 2008, the Federal Reserve decreased the prime rate by 75 basis points to 3.25%, and it has remained at that level since then. *See* http://www.fedprimerate.com/wall_street_journal_prime_rate_history.htm; http://www.federalreserve.gov/releases/h15/current/ (last visited Jan. 7, 2014).

[7] *See* http://www.investopedia.com/terms/d/daycount.asp (last visited Jan. 7, 2014).

Rate).)  Under the circumstances, it would be inappropriate to award Plaintiff interest based on this 360-day methodology, especially as it would yield a somewhat higher amount of accrued interest than a calculation utilizing a daily interest amount based on the actual number of days in a year.  *Cf. Madison Realty Capital, L.P. v. Morris*, No. 08 Civ. 6273 (LAP) (DF), 2009 WL 2146756, at *6 (S.D.N.Y. July 17, 2009) (using a 360-day year method for calculating interest when expressly stated in the note at issue); *Builders Bank v. Northern Funding, LLC*, No. CV 2008–3575 (MDG), 2012 WL 4928854, at *1 (E.D.N.Y. Oct. 16, 2012) (same); *see also CadleRock Joint Venture, L.P. v. Negron*, No. 10 Civ. 4553 (RJH) (FM), 2011 WL 6122263, at *2 (S.D.N.Y. Nov. 21, 2011) (declining to use 360-day method in the absence of explanation by Plaintiff for using that method), *report & recommendation adopted by* 2012 WL 500606 (S.D.N.Y. Feb. 15, 2012).  This Court therefore recommends that Plaintiff be awarded 6% interest on the principal sum of $163,204.12 in the amount of $26.83 per day, based on a 365-day year, and $26.75, for a 366-day year.[8]  (*Cf.* Supp. Hansen Aff. ¶ 7 & Ex. B.)

Accordingly, for the period of June 1, 2009 through and including December 31, 2011, I recommend that Plaintiff be awarded interest in the amount of $25,327.52, and, for the calendar year of 2012, which was a leap year, I recommend that Plaintiff be awarded interest in the amount of $9,790.50.[9]  Finally, for the period from January 1, 2013 to the date of entry of judgment, I recommend that Plaintiff be awarded interest in an amount to be calculated by the Clerk of Court by multiplying $26.83/day by the number of days in that period.

---

[8] These figures are calculated as follows:  $163,204.12 (outstanding principal) x 6.00% (annual rate of interest) / 365 (days per year) = $26.83/day (daily interest).  $163,204.12 (outstanding principal) x 6.00% (annual rate of interest) /366 (days per leap year) = $26.75/day (daily interest).

[9] These figures are calculated as follows:  $26.83/day x 944 days = $25,327.52. $26.75/day x 366 days = $9,790.50.

3.    <u>**Late Charges**</u>

Plaintiff contends that it is also entitled to all late fees that Defendants owed under the terms of the Note.  Pursuant to the Note, Defendants could be charged a 5% late fee on any portion of a regular payment that was not paid within 10 days of the date that it became due.  (Compl. Ex. A, at 3.)  In this regard, Plaintiff seeks $9,587.42, which, according to Plaintiff, represents total late fees accrued through January 16, 2013.  (Supp. Hansen Aff. ¶ 8.)  Plaintiff has failed to explain, however, how it arrived at this figure, or any part of it.

The Loan Payment History reflects that, during the period prior to June 1, 2009 (when Anmi was apparently still making at least some payments on the loan, albeit often late payments), certain late fees were charged.  (Supp. Hansen Aff. Exs. A-1, A-2.  It is not clear from the record, however, whether any of the payments that Anmi made during that time were (or should have been) credited, in whole or in part, to those late fees.  Nor is it clear how those fees, which are shown in varying amounts (*see id.*), were calculated.  Under the circumstances, Plaintiff has not, with sufficient clarity, demonstrated entitlement to the late fees it assessed prior to June 1, 2009, and I do not recommend that its damages award include such fees.

The Loan Payment History is easier to understand for the period subsequent to June 1, 2009, when Anmi apparently stopped making any payments on the loan.  From that date to April 12, 2010, when the loan was charged off, the record reflects that Anmi was assessed a monthly late fee of $157.38, at least 10 days after each monthly payment became due.  (*See id.* Ex. A-2.)  Plaintiff has made an adequate showing that it is entitled to recover those late fees.  Thus, Plaintiff should be awarded such late fees from June 1, 2009, up to April 12, 2010, the date the loan was charged off.[10]

---

[10] I do not recommend that Plaintiff be awarded late fees for the period after the loan was charged off, both because the Court has been given no indication as to how such late fees would

Accordingly, I recommend that Plaintiff be awarded, as part of its damages award in this case, $1,731.18 in late fees, representing $157.38 per month for the 11 months between June 1, 2009 and April 12, 2010.  (*See* Supp. Hansen Aff. Ex. A-2)

## B.   Attorneys' Fees and Costs

Plaintiff further requests that the Court grant it attorneys' fees and costs.  Under the terms of the Note, Anmi agreed to pay the reasonable attorneys' fees and costs incurred by Plaintiff in seeking to enforce the loan documents and collect amounts owed.  (Compl. Ex. A, at 4 ("If Lender incurs . . . expenses [including reasonable attorneys' fees and costs, to collect amounts due under this Note], it may demand immediate repayment from Borrower or add the expenses to the principal balance.").)  For the reasons that follow, I recommend that Plaintiff be awarded total counsel fees of $5,150.00, representing 20.6 hours worked at an hourly rate of $250, and total costs of $435.05.

### 1.   Attorneys' Fees

As a general matter, the "starting point" in analyzing whether claimed attorneys' fees are reasonable is "the lodestar-the product of a reasonable hourly rate and the reasonable number of hours required by the case."  *Millea v. Metro–North R.R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011) (lodestar calculation creates "presumptively reasonable fee" (citing *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany*, 522 F.3d 182, 183 (2d Cir. 2008); *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 552-53 (2010)) (internal quotation marks omitted).  There

---

or should have been calculated, and because late fees are generally unavailable after a debt has been accelerated and installment payments are no longer being sought.  *See, e.g.*, *United Cent. Bank v. Shree Ganesh Properties, LLC*, No. 10 Civ. 8116 (VB) (PED), 2013 WL 1718919, at *5-6 (S.D.N.Y. Mar. 4, 2013) (finding, in context of an accelerated mortgage debt, that no post-acceleration late fees were recoverable absent language to the contrary in the loan agreement), *report & recommendation adopted in relevant part by* 2013 WL 1703875 (S.D.N.Y. Apr. 19, 2013).

is a "strong presumption" that the lodestar represents the appropriate award, although "enhancements may be awarded in rare and exceptional circumstances." *Perdue*, 130 S.Ct. at 1673.

The party seeking fees bears the burden of demonstrating that its requested fees are reasonable. *See Blum v. Stenson*, 465 U.S. 886, 897, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984); *Robinson v. City of N.Y.*, No. 05 Civ. 9545 (GEL), 2009 WL 3109846, at *3 (S.D.N.Y. Sept. 29, 2009). To that end, the fee application must be supported by contemporaneous time records that "specify, for each attorney, the date, the hours expended, and the nature of the work done." *New York State Ass'n for Retarded Children v. Carey*, 711 F.2d 1136, 1148 (2d Cir. 1983). The reasonable hourly rate is what "a reasonable, paying client would be willing to pay," *Arbor Hill*, 522 F.3d at 184 (2d Cir. 2008), and varies by location and practice area, *id.* at 192.

Where the requested amount of fees is excessive because the number of stated hours is greater than should have been required, the Court should reduce the stated hours accordingly. *See Seitzman v. Sun Life Assurance Co. of Canada*, 311 F.3d 477, 487 (2d Cir. 2002) (the time component should not reflect excessive hours). A reduction is also appropriate where the proffered attorney time records are inadequate to enable the Court to determine the reasonableness of the work performed or the time expended. *See Hensley*, 461 U.S. at 433. In determining whether an excessive amount of time was expended on a matter, the Court may also consider the nature and quality of the work submitted by counsel, *see Kirsch v. Fleet St. Ltd.*, 148 F.3d 149, 173 (2d Cir. 1998); *In re Agent Orange Prod. Liab. Litig.*, 818 F.2d 226, 232 (2d Cir. 1987), as well as the degree of counsel's success, *see Hensley*, 461 U.S. at 436.

a.     **Reasonable Hourly Rates**

As an initial matter, the Court must assess whether the attorneys' hourly rates are reasonable.  An attorney's hourly rate is considered reasonable when it is "in line with those [rates] prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Blum*, 465 U.S. at 895 n.11.  The fee applicant bears the burden of demonstrating that the requested rates are in line with the prevailing market rates for comparable work. *See Edmonds v. Seavey*, 2009 WL 1598794, at *6-7 (S.D.N.Y. Jun. 5, 2009) (citing *Blum*, 465 U.S. at 895 n.11).  Yet the court may also apply its "own knowledge" of rates charged in the community where the court sits in assessing the reasonableness of the rates sought. *Miele v. N.Y. State Teamsters Conference Pension & Retirement Fund,* 831 F.2d 407, 409 (2d Cir. 1987); *Arbor Hill,* 522 F.3d at 189.  When an attorney's requested hourly rate is higher than rates found to be reasonable in the relevant market, it is within the court's discretion to reduce the requested rate. *Savino v. Computer Credit, Inc.*, 164 F.3d 81, 87 (2d Cir. 1998).

Here, Plaintiff's attorney Angelo G. Garubo, Esq. ("Garubo") charged $250 per hour. (*See* Affidavit of Counsel in Support of Motion to Enter Summary Judgment, sworn to May 24, 2012 ("Garubo Aff.") (Dkt. 15), Ex. B, at 4.)  Garubo has submitted a declaration stating, under penalty of perjury, that he has been practicing law since 1985 and is licensed in New York, New Jersey, and the District of Columbia.  (*See* Supplemental Certification of Counsel in Support of Plaintiff's Application for Damages, filed Jan. 25, 2013 ("Supp. Garubo Cert.") (Dkt. 31-1).) Moreover, according to the website of Garubo's firm, prior to becoming a managing member of his current firm, Garubo served as General Counsel to Financial Federal Corporation, a nationwide asset-based leasing and finance company, and, before that, he was a partner at the firm of Danzig, Garubo and Kaye. *See* http://romanogarubolaw.com/our-lawyers/angelo-g-

garubo/ (last visited Jan. 1, 2014).  Given Garubo's 28 years of experience, and his significant

experience in commercial transactions and litigations (*see id.*), Garubo's hourly rate of $250 is

within the range of rates, and often below those, that courts have previously found reasonable in

this district.  *See, e.g.*, *Cathay Bank v. Ho Seo*, No. 06 Civ. 15445 (LTS) (RLE), 2009 WL

5341672, at *4 (S.D.N.Y. Dec. 16, 2009) (finding hourly rates of $350 and $385 reasonable for

partners in case involving default judgment for breach of guaranty), *report & recommendation*

*adopted by* 2010 WL 129681 (S.D.N.Y. Jan. 13, 2010); *4 B's Realty 1530 CR39, LLC v.*

*Toscano*, 818 F. Supp. 2d 654, 664-65 (E.D.N.Y. 2011) (reducing hourly rate to $375 for

lawyers with considerable experience in case involving breach of obligations under promissory

note).

   **b.**  **Reasonable Number of Hours**

  Plaintiff seeks compensation for a total of 21 hours of Garubo's time.  (*See* Garubo Aff.

Ex. B, at 4.)  Plaintiff has submitted the requisite contemporaneous time records, attached to the

Garubo Affidavit, which show the work performed by Garubo on behalf of Plaintiff.  (Garubo

Aff. Ex. B.)  Garubo has declared that the report is a true and accurate copy of his firm's time

and expense records in this matter.  (Supp. Garubo Cert.)  The time records show that Garubo

spent time on this matter reviewing the file and relevant documentation, preparing the

Complaint, preparing for service of the summons and other documents on Defendants, preparing

Rule 26 disclosures, attending a status conference with the Court, reviewing Washington's

Answer, preparing a Motion for Summary Judgment, and communicating with the client, among

other tasks.  (Garubo Aff. Ex. B.)

  While most of the time entry descriptions explain, with specificity, the work Garubo

performed, a few of the entries are more vague, simply stating that Garubo "reviewed [a] file" or

"reviewed documents." (*Id.*)  Collectively, however, these entries only constitute 2.6 of

Garubo's total recorded hours, and the entries comprise three of the first four time entries that

Garubo logged in this case, the fourth entry being for Garubo's time "prepar[ing] the complaint."

(*Id.*)  As it thus appears, from context, that Garubo was reviewing documents associated with the

case in order to draft the Complaint, this Court does not recommend reducing the hours he

recorded for such review, especially given the relatively small amount of time involved.

A modest reduction in time, however, is warranted for entries that reflect time incurred

on tasks not properly billed by an attorney.  In particular, the Court notes that Garubo billed

.7 hours for the following time entries:  "reviewed and filed aff. of service" (.3 hours), "reviewed

and filed proof of service" (.2 hours), and "file[d] certification of service" (.2 hours).  (Garubo

Aff. Ex. B.)  While it is appropriate for an attorney to review a certificate of service before it is

filed with the Court, the actual filing of papers is an administrative function that should be done

by a clerical person or a paralegal.  *See, e.g.*, *Ryan v. Allied Interstate, Inc.*, 882 F. Supp. 2d 628,

636 (S.D.N.Y. 2012) ("Plaintiffs cannot recover for time spent by attorneys completing

administrative tasks." (collecting cases)).  I therefore recommend that these .7 hours be reduced

to .3 hours, reducing Garubo's total time from 21 hours to 20.6 hours.

The Court finds that, given the submissions made by Plaintiff, it was reasonable for

Garubo to have spent this number of hours working on this case.  *See, e.g.*, *Diamant v. Dynasto*

*Diamonds and Jewelry Group Corp.*, No. 04 Civ 3884 (GBD) (DF), 2006 WL 728802, at *5

(S.D.N.Y. March 20, 2006) (finding 18.91 hours spent on a breach-of-contract case in which a

default was entered against defendant to be reasonable).  Accordingly, I recommend that Plaintiff

be permitted to recover $5,150.00 in attorneys' fees.

2. **Costs**

Plaintiff also requests an award of $1,188.77 for costs.  Prior to awarding costs, courts have required that invoices be provided to support the alleged expenditures and confirm the total amounts requested.  *See Trs. of Operative Plasters and Cement Masons' Intern. Ass'n, Local 262 Welfare Fund, Annuity Fund, Pension Fund, and Apprenticeship Training Funds v. Mimosa Int'l*, No. 10 Civ. 2168 (DF), 2013 WL 1718913, at *11 (S.D.N.Y. April 16, 2013).  In this case, the time-and-expense report submitted by Garubo included entries for the following costs:  $350 for filing fees, $85.05 for copy costs, $29.94 for postage, $660.00 for service of process, and $63.78 for overnight delivery.  (Garubo Aff. Ex. B.)  The report also indicates the date that the expenses were incurred.  (*Id.*)

The Court agrees that Plaintiff should recover its $350 court filing fee, which is reflected on the Court's docket.  (Dkt. 1.)  Plaintiff has also provided sufficient support for its request that it be awarded $85.05 in copying costs, given that the submitted time-and-expense report includes both the number of copies made and the cost per copy ($.15).  (Garubo Aff. Ex. B.)  Plaintiff has failed, however, to provide invoices, receipts, or any other form of documentation for the costs it claims to have incurred for service of process and mailing, and the Court is thus unable to assess the accuracy or reasonableness of these claimed expenditures.  *See Trs. of Operative Plasters and Cement Masons' Intern.*, 2013 WL 1718913, at *11 (awarding a $45.00 service of process fee only with a supporting invoice); *Abel v. Town Sports Int'l*, No. 09 Civ. 10388 (DF), 2012 WL 6720919, at *34 (S.D.N.Y. Dec. 18, 2012) (refusing to award unsubstantiated, estimated costs).  Accordingly, the Court recommends that Plaintiff be awarded $350.00 for the court filing fee and $85.05 in copying costs, for a total of $435.05 in costs.

## CONCLUSION

For all the foregoing reasons, I respectfully recommend that Plaintiff be granted judgment against Defendants, jointly and severally, in the following amounts:

(1) damages in the amount of:

  (a) unpaid principle on the loan in the amount of $163,204.12;

  (b) unpaid interest in the amounts of:

    (i) $25,327.52, for the period of June 1, 2009 through and including December 31, 2011,

    (ii) $9,790.50 for the calendar year of 2012, and

    (iii) an amount to be calculated by the Clerk of Court for the period from January 1, 2013 to the date of entry of judgment, based on interest of $26.83 per day for that period; and

  (c) unpaid late fees in the amount of $1,731.18;

(2) attorneys' fees in the amount of $5,150.00; and

(3) costs in the amount of $435.05.

I further recommend that the Court's judgment specify that an offset should be applied to the total award for the value of any collateral that Plaintiff has obtained from Defendants pursuant to the Court's Order of Possession, dated January 11, 2013 (Dkt. 29).

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have 10 (ten) days from service of this Report to file written objections. *See also* Fed. R. Civ. P. 6. Such objections, and any responses to objections, shall be filed with the Clerk of Court, with courtesy copies delivered to the chambers of the Honorable Alison J. Nathan, United States Courthouse, 40 Foley Square, Room 2102, New York, New York, 10007, and to the chambers of the undersigned, United States Courthouse, 500 Pearl

Street, Room 1660, New York, New York, 10007.  Any requests for an extension of time for

filing objections must be directed to Judge Nathan.  FAILURE TO FILE OBJECTIONS

WITHIN TEN (10) DAYS WILL RESULT IN A WAIVER OF OBJECTIONS AND WILL

PRECLUDE APPELLATE REVIEW. *See Thomas v. Arn*, 474 U.S. 140, 155 (1985); *IUE AFL-

CIO Pension Fund v. Herrmann*, 9 F.3d 1049, 1054 (2d Cir. 1993); *Frank v. Johnson*, 968 F.2d

298., 300 (2d Cir 1992); *Wesolek v. Canadair Ltd.*, 838 F.2d 55, 58 (2d Cir. 1988); *McCarthy v.

Manson*, 714 F.2d 234, 237-38 (2d Cir. 1983).

Dated: New York, New York
      January 8, 2014

                    Respectfully submitted,

                    DEBRA FREEMAN
                    United States Magistrate Judge

Copies to:

Hon. Alison J. Nathan, U.S.D.J.

Plaintiff's counsel (via ECF)

Ms. Hyon Chon Washington
234 Fifth Avenue
New York, NY 10001